The first case up today is United States v. Pena. Mr. Donovan, I can see you. Can you hear me and see the panel? I can hear you, Your Honor. Can you hear me? Yes. All right. And Mr. Stone? Yes, I'm here, Your Honor. Okay, good. All right. So, Mr. Donovan, you've got ten minutes. You've reserved three minutes for rebuttal. So that gives you seven minutes out of the date. You may proceed. Thank you, Your Honor. I wish I could say that I used the week in order to make my argument better, but I can't. I can't really say that. This is kind of an interesting case, I think, although I've got a tough road to hoe with respect to each of my arguments. I start my brief with Justice Jackson's warning in 1949, the year after I was born, about the sprawling nature of conspiracy, federal conspiracies. And this case is just a good example of how far that body of law has sprawled. Mr. Donovan, can I ask you a preliminary question as to the standard of review? I mean, is this plain error review as to all the issues or some of the issues? Did I say that I had a tough road to hoe in this exact way, Your Honor? That's an answer. And I deal with that briefly at the end of my argument. And I may come back to it if Your Honor wants. But I try to imagine myself trying this case. So you have an indictment. It charges 20 named co-conspirators. During the course of the trial, names of 11 are not even mentioned. Four of them are mentioned just in passing, sort of like, oh, was he arrested in connection with this 11 person, but just in passing. And of the remaining five, three of them are customers. With respect to two of them, Luciano and Roman, there is substantial evidence presented with respect to them. But they're only one small portion of the conspiracy. Then when you get to final argument, the prosecutor mentions in his final argument only three of the named co-conspirators mentioned in his argument, Luciano and Roman. And then also the cooperator's sister, who was one of those just mentioned in passing in the trial. She was mentioned because the cooperator was cooperating in order to try to get her a better deal. But then the prosecutor goes on. He names more than a dozen. I can't tell you the exact number because there are these unnamed Guatemalans in Rhode Island. I don't know exactly who they are. I don't know exactly how many there are. More than a dozen, more than a dozen people whom he says are co-conspirators. And if the defendant cooperated with any of them, with any one of them, then he's guilty of engaging in this conspiracy. I don't know how you can defend against a case like that. That's just so bothersome. Mr. Donovan, isn't there a thread through all of this that Pena is at the center. And first he deals with Maynard, who later becomes a cooperator. Then he deals with Luciano when they go to New London. He meets Luciano first. Then he meets him. Then he deals with him in New London. And at all times, they're getting the drugs from Providence or from Rhode Island, from the Guatemalans. So it's hard for me to see why it isn't the same conspiracy moving in different locations with different members, but the same basic conspiracy with Pena at the center. You're exactly right with respect to Pena being at the center and Pena being the one constant throughout all of it. But I like to think of conspiracy as just an agreement. So after I make this argument today, I'll go to the stop and shop and buy some bread. Then I'll go to a liquor store and buy some alcohol so I can forget the things I shouldn't have said across the argument. Then I'll go to Wal-Mart in order to get some cleaning equipment. The thread is May, but Wal-Mart, it's three different sets of agreements. I have one agreement with stop and shop. I have one agreement with Wal-Mart. And I have another agreement with the liquor store. You're right. What the prosecution has done here is they've taken Pena and they've taken every example of drug dealing that they can prove over the course of five or six years in different districts involving different people and combined them all. And that's the thread. But that's what they charged in the indictment, right? Kind of, but they didn't charge. I mean, if you take a look at the people, at the people that the prosecutor said during the course of this final argument, as I said, he's saying that more than a dozen people who aren't named in the indictment are his co-conspirators. Whereas in the indictment, they've got 20 people, only two of whom. But the indictment says others known and unknown. And that's exactly one of the problems with the sprawling nature of this body of law. The prosecutor can get up in final argument and say anybody about whom he's presented evidence. Do you really think, Judge, this is obviously, I don't expect Your Honor to answer my questions. This is a rhetorical question. Do you really think that the prosecutor presented in the grand jury evidence concerning each of those 20 people? I mean, the Guatemalans, I don't know. I don't have the grand jury transcripts. But do you really think that the prosecutor presented evidence about the 20 people or during the course of the grand jury? Customers and. But just because whatever was presented to the grand jury does not dictate how the trial, how the prosecution is going to conduct the trial. We're going to put on a trial with witnesses and and to make their case that is a single conspiracy. And that this is these are the members. There were at least sufficient members for that. And and the and the various the various activities that occurred. They don't have to necessarily put in. You're asking for for more proof of evidence that's not necessarily relevant to the case they're trying. Well, you're right about that, except that I think we have it. We have a Fifth Amendment right to have a grand jury consider the charges against us and return indictment to use that to use the stop and shop example. OK, if the government present a huge amount of evidence concerning my going to the stop shop and making an agreement to buy some bread. Never says a word in the grand jury about my going to the liquor store or the or the or or what. And then during the course of the of the of the trial claims that these were the Walmart and the and the and the liquor store were known and unknown to the grand jury. They were known and known to the grand jury. I mean, someone who's unknown to the grand jury is someone who's there's been evidence presented against them in the grand jury. But you don't really know the grand jury doesn't really know the identity. I don't think the evidence could be could be in the grand jury, could be hearsay. Right. And it could be it could be, you know, the unknown characters are the ones you mentioned, at least some of them. And those are the suppliers up in Rhode Island. Oh, sure. And I wouldn't be surprised, actually, if evidence concerning the Guatemalans was presented. I mean, they were they were significant. The bottom line here is, as you pointed out earlier, that this is a plain error situation. It wasn't brought to the attention of the district judge. All of these so-called problems that you have. And so there wasn't anything that could be could be done about it. Charges weren't requested and the like. So somehow this judge on his own is supposed to conjecture multiple conspiracies and act accordingly. That's the that's your time. That's the big problem I face. But but but it seems to me that a judge hearing this evidence should have seen. Boy, there's a big question here concerning saying multiple conspiracies. I should on my own give that decision. So I say that there was error and that it was plain. And I also say that because of this, this this argument that I made about the sprawling nature of the of the conspiracy, it it brings the federal courts into dispute to have to not not define carefully the crimes that people be convicted of. This was a one defendant trial, right? Was your. And so I'm not going to go back to 1949, but I'll go back to 1976 when this court, you know. These instructions said we've been cited to no case which involves only one defendant at trial where a claim of multiple conspiracies has been sustained. Are you aware of any case in the intervening 45 years where a multiple conspiracies instruction was deemed appropriate in a single defendant trial? Well, as I said here today, I'm not aware of one. If I had been aware of one, I would have thrown it into my brief. So I guess the answer has to be no, Your Honor. But on the other hand, I don't I'm not exactly sure I've ever come into into contact with a case like this in which the you know, in which the prosecutor is arguing in his final argument that more than a dozen people who weren't even named in the indictment are co-conspirators. And I don't think I really don't think that people the evidence that is that was presented at trial was there was some consistency there. Mena was involved pretty much all the way through. Then they went to Florida and the same conspiracy was operating through surrogates up in New England. And then when they came back, Mena and and and and the defendant went to went to went to New London and then Mena drops out. And and Luciana was in the picture. So it's all you know, it all connects because and the suppliers are always the same. Yeah, I you know, there is there is some some weight to that. But what I'd ask you to do is to compare it, compare the conspiracy at the end with the conspiracy at the beginning. At the beginning, Mena is not involved. The Guatemalans are involved. We're not sure. And that the Guatemalans are the suppliers, whether the suppliers are not because Mena is no longer a member of the conspiracy. He's he's he's had an argument at the end. What you've got is Luciano is Pena and Luciano and Luciano was involved at the very beginning of the conspiracy. He comes in later. Or think about think about, for example, the when when when when Pena goes to Florida, there's a substantial change in the nature of the conspiracy at that point. I'm not saying that conspiracies can't evolve, that new people can't can't can't join or people can't leave. But the thing is, if we take a look at the various the different. These that I say exist, they're all so, so, so different that that that that they really are different conspiracies. Again, you're right. I didn't. The defense did not request a multiple or single conspiracy instruction. And that's my. That's the hot part of my appeal here. But in any case, I think these conspiracies are substantially different, despite judge the fact that that is one main conspirator, Pena, and that continues through. So I could have the rest of my time for. So you've got three minutes rebuttal. We'll hear now from Mr. Stone for 10 minutes. Good morning, Your Honors. May it please the court. Assistant United States Attorney Jeff Stone on behalf of the United States. The evidence of trial established that Eddie Pena participated in one continuing ongoing conspiracy where he was the central figure or hub of the conspiracy. And there was one central purpose to distribute heroin for profit. In addition, there was nowhere either plain or otherwise with the district court's instructions. Accordingly, the district court's judgment should be affirmed with regard. Are you familiar with the cardiac arrest case? The cardiac arrest case. I didn't see it cited in your brief, but that was a case in which there was a hub consisting of one conspirator. And that hub then dealt with other individuals who didn't know each other. But and that was it. That was a call. He was that he was the hub of the wheel and they were the spokes. And and and there were separate there were separate spokes. And the Supreme Court said in cardiac arrest that that was not a single conspiracy because each time he dealt with someone else, that the guy who was at the center, each time he dealt with somebody else and it was a transaction that occurred. Nobody else was involved in that, and therefore there were multiple conspiracies. So one person can be. If one person is the hub and you have a spoke wheel conspiracy, then you have multiple conspiracies. You follow me? Yes, Your Honor. I forget exactly what the transactions were in the frauds, but maybe it was. It might have been bad frauds, but it was separate, separate schemes all the way around with the one guy doing it in the middle. The one the one central person. And and that was a that was multiple conspiracies. But I was wondering if you had any thoughts about why this case is different from that. Your Honor, I'm not familiar with the cardiac arrest case other than your explanation here. But I would say here there were common threads that were constant throughout the entirety of the conspiracy. One was that there was one central purpose for the conspiracy, which was to distribute heroin for profit to that. There was one central figure in the middle of the conspiracy at all times. And that was Eddie Pena. And he was the leader of this conspiracy. And then three, there were core operations that remained constant throughout the entirety of the conspiracy. Some of these included that Eddie Pena was obtaining wholesale quantities of heroin from his Guatemalan sources of supply in Rhode Island. Two, that he used the phone to arrange heroin transactions with his customers or his dealers or distributors. And three, that he used other people such as Jacob Mena, Michael Luciano and others to distribute heroin on his behalf. So the core elements of this conspiracy remained the same throughout the entirety of the period. Moreover, where there was an evolution or a shifting of operations such as a shifting of locations, it was always at the direction of Eddie Pena. And usually it was because of law enforcement activity and Eddie Pena's concern about being detected and apprehended by law enforcement. And so like any business, he had to adjust his business with the times so that he could effectively operate his business, which in this case was illegal heroin trafficking. So based on that, the government would respectfully submit that this case – there was no surprise in this case. The defense knew the conspiracy that was charged in the indictment was provided with discovery in advance. There was never any claim at trial that the defense was surprised in any way. The defense was provided with the grand jury transcripts, sent to the grand jury evidence regarding the entire five-year period. It was evidence – it was a presentation that was consistent with the trial evidence. It might not have included all of the details of the trial evidence, but certainly the exhibits that were introduced, the testimony that was elicited was all consistent with what was disclosed pretrial. All right. Kadiakos involved a fraudulent guy who contacted various lenders who were seeking to get insurance. And he conspired with them to submit false information to the insurance companies. And he did this repeatedly with different lenders. And the different lenders didn't know each other. So Kadiakos was the only person who knew everybody. And he – those were the so-called spokes that went out. And so the Supreme Court – maybe the law has significantly changed, although Kadiakos has never been overruled. It's not a new case. In fact, it was decided two years before Mr. Donovan was born. But it still, I think, is the law. But that's the one I always think of when I think of multiple conspiracies. But those lenders, they didn't know each other. Only one guy knew each lender. And they were – so the Supreme Court said those were separate conspiracies. And there was no reason why any one lender would know that there were other lenders. Is that the case here, that the spokes – it's the end of the spokes. Is that the case here that they didn't know that each – none of them knew that the other ones existed as seems to appear? Exactly. Is that all the case? Is that the case? Is that the case here? Yeah, that's the one. Your Honor, no, that is not the case here. Here we have numerous co-conspirators who are in a collaborative relationship with Eddie Pena and knew about other co-conspirators who were part of this overarching conspiracy. Your Honor, the Carriacos case sounds like it might be more like a scenario where you have a bunch of buyer-seller situations. And Eddie Pena is just making sales to end users that have no connections to each other. In this case, Eddie Pena had surrogates who was basically handling the day-to-day operations of his business when he was in Florida, mainly Joan Nunez and his sister Gladys Pena. He had Jacob Mena throughout who was involved in the processing and the distribution of heroin to various dealers. We have Michael Luciano who initially started as a purchaser or a customer who was obtaining wholesale quantities of heroin from Eddie Pena. But then he transitioned into this arrangement where Michael Luciano said, hey, I have a bunch of street dealers in the New London area who could buy and sell grand quantities of heroin on your behalf. And we could make a substantial amount of profits. And that's sort of the evolution of this conspiracy where you have these middlemen who are working in a collaborative way with Eddie Pena and who knew other people who were members of this conspiracy or part of the spokes along this wheel of this distribution. I take it, to use Mr. Donovan's encouraging example, hypothetical, this is a little, maybe the Cariacas case is more like where the defendant would go in and buy some wine in one liquor store and then go buy a bottle of scotch in another liquor store and then go buy a bottle of bourbon in another liquor store where each one is a separate spoke and they don't, the three liquor stores have no knowledge of. Yeah, the facts in Cariacas, you know, I think it's an interesting case. That's why I'm mentioning it. Back to the Cariacas, these were frauds on the government to get insurance or loans for housing. And Cariacas was the main developer. And he would build the houses and he'd sell them and he would get a lender and a corrupt lender to. So that was a conspiracy to go to submit false information to the Federal Housing Authority. And each one of those little spokes involved a corrupt lender. And he was supplying the false information and they were taking it and submitting it to the FHA with knowledge. So each of those had two people who were agreeing to do something crooked. And so there were separate conspiracies. And I think the Supreme Court made the point, certainly in other cases, they've made the point that if Cariacas had a partner and there were two of them doing it, then you'd have this you'd have you'd have an agreement between them and you could have different people, you know, fulfilling the conspiracy. We didn't know each other and that. But you still have one conspiracy between the two guys at the center. But Cariacas operated alone. So that's why it was different. Your Honor, respectfully, it sounds like the Cariacas is a very different scenario than this scenario. We're not suggesting it's the same even. I just. Yeah, I just wanted to. I was curious that it wasn't in here. It's one of the more interesting cases in this area. In conclusion, Your Honor, as I see my time is almost running out. In conclusion, the trial evidence established that Eddie Pena was the hub or the central figure in an overarching heroin trafficking conspiracy that spanned approximately five years and involved multiple locations. Further, the evidence or the record establishes that there was no error in the district court's instructions, either plain or otherwise. Accordingly, the government respectfully submits that the judgment of conviction should be affirmed. Thank you, Your Honors. Thank you, Mr. Snow and Mr. Donovan. You have three minutes of rebuttal. Thank you, Your Honor. Let me just give you a couple of a couple of examples of why these conspiracies are so different. Take a look at this guy, at these guys, Nunez and Richard. They get arrested with while they're doing a drug deal with 2012 in Rhode Island. Do they have any connection whatsoever with Roman and Luciano in London in 2016 or any connection whatsoever with his sister who was running the drug deal? He goes to Florida. And as Judge Walker says, the Guatemalans, the Guatemalans are a constant throughout this. The testimony is that he gets his he gets his drugs from Guatemalans. But the government didn't know who those Guatemalans are. They don't have any names. Is this is this just a five different suppliers over the course of the years who who come from Guatemala who provide to them? Are they competitors? Are they like a separate conspiracy that he's purchasing from? Just because they're called Guatemalans doesn't mean that they're a constant throughout the course of this. Because there are so many because because this I think I think my brother is right that this isn't exactly a hub and spokes conspiracy. But but but it does have, as Walker says, certain certain similarities to it, because the center of it, the one thing that is constant throughout is Pena. Informant Mena is is is part of it. Not at the very beginning, but the end of it. But through much of it, he he's a constant. But otherwise, it's a it's a it's a constantly shifting group of people that Pena gets involved with. And of course, the problem is they're allowed to share and they're allowed to be involved. I mean, here we've got the same objective, which is the distribution of power. We've got the same leadership and we've got common participants that span years. But we are in the United States. You said that's enough to establish a single conspiracy. Why is that not the exact same case here? Because the common. Well, the question is, what's the agreement? OK, Pena makes an agreement with Richard and Nunez that he's going to sell them some drugs in 2012. No, no, no, no, no, no. The agreement is to distribute or possess with the intent to distribute heroin. That's that is the objective of the conspiracy. You can do that with multiple people over multiple years. No, but I think there's a temporal limit to this. Yeah, I know. I think you're combining Pena had Pena had a constant intent to distribute heroin. But Pena made many different agreements in order to do that. When they got to New London, they were. Mena was still in the in the conspiracy or in the in the in the in the arrangement at the beginning. He tried at the beginning. So that was the same conspiracy that had gone on all along. But now I'm just a different location. No, it wasn't. I don't mean to interrupt, but it wasn't the same conspiracy very beginning. Because Mena doesn't get involved in the conspiracy until it's until it's it's well on its way. Mena is not involved from the beginning. But whatever he got involved in, at least at that point, there was a conspiracy between Mena and Pena. And and then that that conspiracy persists all the way through to New London, into New London. And then Luciano, in effect, comes comes up. In fact, Luciano had been a customer of Mena Pena before. So now there's a shift to Luciano as Mena drops out. But it doesn't seem to me that that's at least that's open to debate as to whether that that constituted a separate conspiracy. Likely it didn't. But but in any event, it was the same operation just moving to different places with different characters. Everything you're saying is true, except the conclusion. I mean, I see. I'll sit down. I'll sit down and share in just a second. I see that when when Pena is with Luciano, let's move our operation to New London and get involved with some different people. Now, Mena is still involved. It's true. But they're getting involved with totally different people. Now it's a three way split of the it's a three way split of the of the proceeds. That's not a new conspiracy. That's a new. Why couldn't a conspiracy between two people be expanded to add more members without changing the fact that it was the it was it was it was the same conspiracy. You have the same two members. That's that's a question that should have been that the jury should have decided rather than my having to argue it on appeal. And they had been. Yeah. Well, I think maybe maybe you could put your maybe maybe this goes back to the fact that it's a plain error question now. Maybe in any case, your honors, and I hope you'll you'll consider my admittance and everything I've said in the brief and reverse the conviction. And thank you both. We will reserve decision. And now we'll move on to.